IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARON OAKES | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security | : | NO. 04-5072 |

REPORT AND RECOMMENDATION

JACOB P. HART                                                              DATE:   July 21, 2005
UNITED STATES MAGISTRATE JUDGE

      Sharon Oakes brought this action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits (DIB). The parties have filed cross-motions for summary judgment. For the reasons that follow, I recommend that Oakes' motion be granted in part and that the matter be remanded for the taking of medical evidence on the subject of whether the combination of her impairments equals a listed impairment.

I.      <u>Factual and Procedural Background</u>

      Oakes was born on November 17, 1959. Record at 68. She completed high school and two years of higher education. Record at 80. She worked in the past as a deli clerk in a Wawa, a patient care assistant at an insurance company, an assistant at an optometrist's office, a physical therapy aide, and as a medical assistant. Record at 75.

      On June 3, 2003, Oakes filed an application for benefits claiming disability since December 11, 2002. Record at 68, 74. Her application was denied by the state agency. Record at 63. Oakes then requested a *de novo* hearing before an Administrative Law Judge ("ALJ"). Record at 67.

A hearing was held before an ALJ on April 20, 2004. Record at 34. However, the ALJ denied Oakes' claim, in a decision dated May 27, 2004. Record at 10. The Appeals Council denied Oakes' request for review, allowing the ALJ's decision to stand as the final decision of the Commissioner. Record at 4. Oakes subsequently filed this action.

II.  Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, supra at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). Each case is evaluated by the Commissioner according to a five-step process:

> The sequence is essentially as follows: (1) if the claimant is currently engaged in substantial gainful employment, she will be found not disabled; (2) if the claimant does not suffer from a "severe impairment," she will be found not disabled; (3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and it has lasted or is expected to last continually for at least twelve months, then the claimant will be found disabled; (4) if the severe impairment does not meet prong (3), the Commissioner considers the claimant's residual functional capacity ("RFC") to determine whether she can perform work she has done in the past despite the severe impairment - if she can, she will be

found not disabled; and (5) if the claimant cannot perform her past work, the Commissioner will consider the claimant's RFC, age, education, and past work experience to determine whether she can perform other work which exists in the national economy. *See id*. § 404.1520(b)-(f).

Schaudeck v. Commissioner, 181 F.3d 429, 431-432 (3d Cir. 1999); 42 U.S.C. § 423(d)(2)(A).

III.     The ALJ's Decision and Oakes' Motion for Summary Judgment

The ALJ determined that Oakes suffered from the severe impairments of a lumbar disorder, diabetes mellitus with peripheral neuropathy of the feet, and obesity. Record at 25, ¶ 3. He did not entirely credit Oakes' testimony as her limitations. Record at 25, ¶ 5. He concluded that she retained the RFC to engage in sedentary work limited as follows:

> The claimant can lift and carry less than ten pounds occasionally; can stand and walk for less than two hours out of eight; can sit for a total of eight hours out of eight, provided that the claimant can alternate standing and sitting positions at will; can never climb ladders, ropes or scaffolds; cannot perform activities requiring a sense of balance; can climb stairs and ramps, bend, kneel, crouch or crawl no more than occasionally; cannot handle, finger and feel more than frequently; cannot reach overhead; should avoid concentrated [frequent] exposure to extremes in hot and cold temperatures, wetness, and humidity; and should avoid all hazards such as moving machinery and unprotected heights.

Record at 25, ¶ 6.

Based on the testimony of a vocational expert who testified at trial, the ALJ determined that Oakes' past work as an insurance clerk did not require the performance of activities precluded by her limitations. Record at 25, ¶ 8. Thus, he found that Oakes could return to her prior work. Id. Alternatively, the ALJ found that Oakes could make an adjustment to other occupations such as charge account clerk, call-out operator, and surveillance systems monitor. Record at 25, ¶ 11. He concluded, therefore, that Oakes was not disabled. Record at 26, ¶ 12.

In her motion for summary judgment, Oakes argues that the ALJ erred (1) by not obtaining expert medical testimony to determine whether her impairments met or equaled Listing 9.08A or Listing 11.04; (2) by finding her depression not to be a severe impairment; (3) by failing to include in his hypothetical question to the vocational expert all of her limitations; and (4) by failing to fully credit her testimony.

IV.   Discussion

A.    The Listed Impairments

1.    Meeting a Listed Impairment

Substantial evidence supports the ALJ's determination that Oakes's impairments do not meet Listing 9.08 (Diabetes Mellitus) or 11.14 (Peripheral Neuropathy). Both of these Listings require "significant and persistent disorganization of motor function in two extremities" resulting in "sustained disturbance of gross and dexterous movements, or gait and station."

Unquestionably, there is evidence that Oakes' diabetes caused peripheral neuropathy in her feet. On April 21, 2003, she sought assistance at the University of Pennsylvania emergency room for pain, numbness and tingling in her feet. Record at 222. It was noted at that time that this "appeared to be diabetic nephropathy", and that Oakes had been taking naprosyn for this condition for the past year. Record at 223. Dr. Arthur Smith, Oakes' general practitioner, repeatedly described Oakes as suffering from neuropathy, and on August 26, 2003, noted a complaint of "severe pain in the balls of both the feet" and numbness in the toes. Record at 322 and see 319, 321. On February 12, 2004, Dr. Nayyar Iqbal, a diabetes specialist, also wrote that Oakes took Naprosyn for "burning under the feet" and experienced numbness, tingling and pain in her hands. Record at 263, 264.

Clearly, this neuropathy would cause some level of functional impairment, if only because it would create discomfort. However, the most significant abnormalities in Oakes' motor function appear related more to a stroke Oakes suffered in 1978, and to her lumbar impairment. Several doctors have noted mild one-sided weakness and clonus (a reflex abnormality) they have attributed to the stroke. Record at 274 (Dr. Curtis Slipman of the Penn Spine Center, noting clonus and inability to heel and toe walk in the right); 340 (cardiologist Dr. Joseph Carver, noting mild weakness on the right side of the body "consistent with prior CVA."); 245 (clonus and mild right-sided weakness noted by Ronald Bock, MD, consulting examiner); but see Record at 201 (orthopedist Michael R. McCoy, M.D. writes on November 5, 2002: "heel and toe walk was normal").

Other limitations were related to the spinal degeneration found on Oakes' CT scans and x-rays. See Record at 216 (abnormal cervical CT scan, taken in August, 2002); 296-298 (finding osteoarthritis with disc bulging, foraminal narrowing and "extensive degenerative changes" in the lumbar spine on November 28, 2003); and 299 (Dr. Slipman's report discussing the November 28, 2003, x-rays). An orthopedic examination on January 7, 2003, at the Regency Medical Center, where Oakes had treated for back pain after a July 8, 2002, car accident, showed lumbosacral ranges of motion decreased by approximately 30%, as well as tenderness in all areas of the spine. Record at 193-194. Notably, however, Oakes has not questioned the ALJ's determination that she did not meet Listing 1.04 (Spinal Disorders).

Given the foregoing, it is apparent that the ALJ was justified in concluding that Oakes had not shown "significant and persistent disorganization of motor function in two extremities" as a result of diabetic neuropathy, and therefore could not meet Listing 9.08 or 11.14.

5

2.      <u>Equaling a Listed Impairment</u>

As noted above, the third stage of the statutorily mandated sequential evaluation requires an ALJ not only to determine whether the claimant meets a listing, but whether the combination of her impairments "equals" a listing:

> <u>Multiple Impairments</u>:  In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider **the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity**.

20 CFR § 404.1523.  (Emphasis supplied).

The Social Security Administration has said in Ruling 96-6p that an ALJ is the final decisionmaker on the issue of equivalence to a listing.  Nevertheless, SSR 96-6p goes on to state that "longstanding policy requires that the judgment of a physician ... designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight."  SSR 96-6p.

It is particularly notable here that Oakes suffers from a number of well-documented impairments, even though no single impairment meets a listing.  Specifically, she suffers from degenerative back disease, diabetic neuropathy, and the residuals from her stroke, as discussed above, as well as a skin disease which aggravates her diabetes, since it is treated with large doses of steroids.  <u>See</u> Record at 265.  Oakes' obesity, though not a listed impairment in itself, should also be considered as a possible factor affecting her functional abilities.  S.S.R. 02-01p.

Also, at the time of the hearing, Oakes was in treatment for depression. Record at 304-315. Although the ALJ found Oakes' depression not to be severe, it would still be properly considered as a part of the combination of all impairments. 20 CFR § 404.1523, supra. Moreover, the ALJ has misconstrued at least one therapy note. He quotes a statement that the therapist would "process terminating therapeutic relationship next session" as evidence that Oakes' depression was not likely to last for the required twelve months. Record at 16. However, a look at the record reveals that the "therapeutic relationship" with one therapist was terminated only because she was leaving, to be replaced by a new therapist. Record at 314-315.

Usually, the requirement of a medical opinion on equivalence is not an onerous one. Social Security Regulation 96-6p states that the presence of a Disability Determination and Transmittal ("DDT") form in the file, signed by "a state agency medical or psychological consultant ... ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review."

The DDT form in this case, however, was signed only by a non-medical "disability examiner." Record at 62. This is because the case is part of a pilot program in which the signature of a medical expert is not required on a DDT. 20 CFR § 404.906(b)(2).

Despite the Commissioner's argument to this effect, however, I am not convinced that the intent of the pilot program is to overturn the "longstanding policy" that an ALJ's equivalency decision must be informed by a specific medical opinion. There is no language in 20 CFR § 404.906 itself which suggests that this is the case. In fact, the two directives can easily co-exist, since SSR 96-6p explains that a DDT form is not the only source of such evidence: "other

documents ... on which medical and psychological consultants may record their findings may also ensure that this opinion has been obtained at the first two levels of administrative review."

Here, however, no such "other documents" are present. Because I am not willing to assume that the pilot program has eliminated a claimant's right to a medical opinion on the equivalency determination, I recommend that the matter be remanded for the taking of medical evidence in this regard.

The Commissioner also argues: "Clearly, if the medical evidence supported that Plaintiff could perform a range of sedentary work, she could not have met or equaled a listing, a higher standard which would have meant that she was *per se* disabled." This argument, if accepted, would do away with the third stage of the sequential evaluation entirely. Under this approach, the agency could always work backwards; first deciding upon an RFC, and then arguing retrospectively that this compelled a conclusion that no listing was met or equaled. Conversely, if a claimant was found unable to work at stage four, it would be irrelevant whether she met or equaled a listing. This was certainly not intended by the drafters of the Social Security Act. See 20 CFR § 404.1520(a)(4): "The sequential evaluation process is a series of five 'steps' that we follow **in a set order**."  (Emphasis supplied).

B.     Oakes' Other Claims

Oakes' other claims relate to stages four and five of the sequential evaluation. Therefore, they should be reevaluated after the ALJ has had a chance to make a full determination as to whether Oakes' combination of impairments equals a listing.

VI.     Conclusion

In accordance with the above discussion, I make the following:

**R E C O M M E N D A T I O N**

AND NOW, this 21st day of July, 2005, it is RESPECTFULLY RECOMMENDED that the Commissioner's motion for summary judgment be DENIED; and it is further RECOMMENDED that Plaintiff's motion for summary judgment be GRANTED IN PART AND DENIED IN PART, and the matter remanded for the taking of medical evidence on the subject of whether the combination of the Claimant's impairments equals a listed impairment.

BY THE COURT:

_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHARON OAKES                          :        CIVIL ACTION
                                      :
    v.                                :
                                      :
JO ANNE B. BARNHART,                  :
Commissioner of Social Security       :        NO. 04-5072

O R D E R

THOMAS N. O'NEILL, JR., J.

      AND NOW, this         day of                    , 2005, upon consideration of the

Plaintiff's Motion for Summary Judgment, and the Defendant's Motion for Summary Judgment,

and after careful review of the Report and Recommendation of United States Magistrate Jacob P.

Hart, IT IS ORDERED that:

      1. The Report and Recommendation is APPROVED and ADOPTED.

      2. The Defendant's Motion for Summary Judgment is DENIED.

      4. The Plaintiff's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART and the matter remanded for the taking of medical evidence on the subject of whether the combination of the Claimant's impairments equals a listed impairment.

BY THE COURT:

_____
THOMAS J. O'NEILL, JR., J.